**Contrice L. CARTER, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 02A03–9905–PC–191.**

Court of Appeals of Indiana.

Feb. 25, 2000.

Rehearing Denied April 5, 2000.

Susan K. Carpenter, Public Defender of Indiana, Tracy A. Nelson, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-petitioner Contrice L. Carter appeals the denial of his petition for post-conviction relief. He presents one issue: whether the trial court erred in accepting his guilty plea when he pled guilty on the day his trial was to begin, after a thorough plea hearing, and then at his sentencing hearing made a statement implying that he was innocent.

## FACTS

The facts reveal that on July 5, 1993, Carter had an argument with Alvinchy Washington. Carter shot Washington, who died as a result of the shooting. On July 8, 1993, the State charged Carter with Murder.[1] On September 7, 1993, Carter's trial commenced with the empaneling of the jury. After Carter discovered that the deposition of his alibi witness did not corroborate his story, he approached the State to ask for a plea agreement. On September 8, 1993, Carter entered into a written plea agreement with the State in which Carter agreed to plead guilty to voluntary manslaughter,[2] a Class A felony. In return for Carter's plea, the State agreed to dismiss the murder charge. The plea agreement set Carter's sentence at 30 years.

1. IND.CODE § 35–42–1–1.

2. I.C. § 35–42–1–3.

On September 8, 1993, the trial court conducted a plea hearing, advising Carter of his rights and reviewing with him the terms of the plea agreement. Carter stated that he had read, understood and signed the plea agreement. He further stated that he was not coerced nor threatened and that his guilty plea was free and voluntary. He then pled guilty to voluntary manslaughter. Carter laid the factual basis for the plea and stated that he was guilty because he "shot somebody." Record at 202. The trial court took the plea under advisement, set the case for sentencing, and discharged the empaneled jurors.

During the interview for the presentence investigation report (PSI), Carter told the probation officer, "I am pleading guilty because I cannot prove that I didn't do it." R. at 46. On October 7, 1993, at the sentencing hearing, Carter said that he was not satisfied with his attorney because she told him to sign the plea agreement after he could not prove that he did not kill Washington. He said if he was maintaining his innocence, his attorney was "supposed to be pushing with that for me no matter what the outcome could be." R. at 211. The trial court stated that it had read the PSI, reviewed Carter's plea hearing, and found that Carter was adequately advised of his rights, his plea was free and voluntary, he was not under duress, and he had set out a full factual foundation for his guilty plea. The trial court stated that, to the extent Carter's statements could be taken as a motion to withdraw his guilty plea, it was denied.

On April 18, 1996, Carter filed a pro se petition for post-conviction relief, and an amended petition by counsel on October 27, 1998. In his amended post-conviction petition, Carter alleged that the trial court erred when accepting his guilty plea after he had protested his innocence.

On April 6, 1999, the post-conviction court denied relief to Carter. The court found that the trial court did not err in accepting Carter's plea because a trial court has the discretion to accept a guilty plea of a defendant who pleads guilty and then maintains his innocence at a separate later hearing. The post-conviction court found that Carter's plea was knowingly, voluntarily, and intelligently made and Carter failed to prove his claim on the merits by a preponderance of the evidence.

## DISCUSSION AND DECISION

### I. Standard of Review

We note that Carter appeals from a denial of post-conviction relief. In order to prevail on his petition for post-conviction relief, Carter had to establish that he was entitled to relief by a preponderance of the evidence. *Canaan v. State*, 683 N.E.2d 227, 228–29 (Ind.1997), *cert. denied*, 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). On appeal from the denial of his petition, Carter must reach a higher standard: that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999).

Furthermore, a trial court's ruling on a motion to withdraw a guilty plea arrives in this Court with a presumption in favor of the ruling. *Hunter v. State*, 676 N.E.2d 14, 18 (Ind.1996). On appeal, this court presumes that the trial court's decision was correct and reviews only for an abuse of discretion. *Elsten v. State*, 698 N.E.2d 292, 295 (Ind.1998); *Bland v. State*, 708 N.E.2d 880, 882 (Ind.Ct.App. 1999).

### II. Carter's Claim

Carter's sole contention is that his statements at the sentencing hearing constituted a protestation of innocence and therefore the trial court erred in accepting his guilty plea. Specifically, Carter argues that the trial court erred because he main-

tained his innocence prior to the court's formal acceptance of his plea.

■ We note initially that our supreme court has long prohibited trial courts from accepting the guilty plea of a defendant who, *at the same time* he pleads guilty, also maintains his innocence. *Ross v. State*, 456 N.E.2d 420, 423 (Ind.1983); *Harshman v. State*, 232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953). In capital cases, a court may not accept a plea of guilty from a defendant who, at *any* time after his guilty plea, maintains his innocence. *Patton v. State*, 517 N.E.2d 374, 376 (Ind. 1987). However, in non-capital cases, we have generally concluded that the trial court is afforded discretion in ruling upon the guilty plea of a defendant who, after entering his plea, maintains his innocence at a separate, later hearing. *Harris v. State*, 671 N.E.2d 864, 869 (Ind.Ct.App. 1996) (court need not set aside guilty plea of defendant who, at sentencing hearing maintains "to a degree" his innocence); *Bewley v. State*, 572 N.E.2d 541, 544 (Ind. Ct.App.1991) (trial court not required to set aside guilty plea where defendant maintains innocence after guilty plea but before sentencing). We find only one case which limits the trial court's discretion in non-capital cases: *Brooks v. State*, 577 N.E.2d 980, 981 (Ind.Ct.App.1991) (where a defendant pleads guilty, then maintains his innocence at later hearing but before the trial court formally accepts plea, the court may not accept plea). For reasons enumerated below, we repudiate the holding of *Brooks* today.

We further note that Indiana has enacted a statutory framework which details the methods for reaching plea agreements and assures that the needs and rights of victims, defendants, and society at large are all considered before the acceptance of a guilty plea. *See Ind.Code* § 35–35–1 and – 3. The statutes impose numerous requirements upon the trial court before it may accept a guilty plea, including that the defendant understands the nature of the charge against him, has been informed that by his plea he waives the rights to a public and speedy trial by jury, to confront witnesses, to have compulsory process for obtaining witnesses, and to require that the State prove his guilt beyond a reasonable doubt at a trial where he will not be required to testify against himself. I.C. § 35–35–1–2(a)(1) and (2). In addition, the defendant must be informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of a prior conviction or convictions. I.C. § 35–35–1–2(a)(3). Furthermore, IND.CODE § 35–38–1–8 provides that a defendant "may not be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court." Thus, a trial court is obliged to take a guilty plea under advisement until such time as the presentence report is available.

In this case, Carter received a thorough plea hearing which met all statutory requirements. Carter first approached the State on September 7, 1993, after a jury was already empaneled for his trial, to request a plea agreement. R. at 213, 215. On September 8, 1993, Carter entered into a written plea agreement with the State in which he agreed to plead guilty to voluntary manslaughter and the State agreed to dismiss the murder charge. R. at 38. The trial court conducted a plea hearing on the same day. R. at 191–204. The trial court advised Carter of his rights and reviewed with him the terms of the plea agreement. R. at 194–96. Carter stated that he understood the rights he would waive in pleading guilty. R. at 195. Carter stated that he had read and signed the plea agreement and had discussed it with his attorney. R. at 199. He further stated that he was neither coerced nor threatened, and that his guilty plea was free and voluntary. R. at 201. He then pled guilty to voluntary manslaughter. R. at 201–02. At no point during the guilty plea hearing did Carter maintain his innocence. Moreover, Carter laid the factual basis for the plea, stating that he had "shot somebody."

R. at 202–04. He also stated that he was satisfied with the representation he had received from trial counsel. R. at 201.

The trial court then took his guilty plea under advisement and set the case for sentencing, and the jury was discharged. R. at 40. Pursuant to I.C. § 35–38–1–8, a presentencing report was ordered so that the trial court could consider it before accepting a guilty plea. R. at 438.

On October 7, 1993, at his sentencing hearing, Carter contradicted his earlier statement to the trial court, asserting that he was not satisfied with his counsel and that the latter had recommended that he plead guilty when she should have defended him because he had maintained his innocence to her. R. at 211. The trial court found that, to the extent that Carter's statement could be taken as a request to withdraw his guilty plea, it was denied. R. at 216–17. The court then sentenced Carter to thirty years. R. at 220.

Carter now maintains that he was asserting his innocence before the trial court formally accepted his guilty plea, and that the trial court thus could not accept his guilty plea. To support his contention that this matter of formal acceptance dictates that he be granted post-conviction relief, he cites *Brooks,* 577 N.E.2d at 981. *Brooks* is the sole Indiana case which holds that, where a defendant pleads guilty but then asserts his innocence at a later hearing, the trial court's authority to accept the guilty plea hinges upon its having formally accepted the plea prior to the defendant's assertion.

The *Brooks* decision was based upon the law of *Ross,* 456 N.E.2d at 423. We are compelled today to repudiate the holding in *Brooks* as an unnecessary extension of the law of *Ross.* We further find that the holding in *Brooks* is destructive to the intent of the plea statutes.

■ First, *Ross* held only that a trial court may not accept the guilty plea of a defendant who *simultaneously* tenders the plea and asserts his innocence. *Ross,* 456 N.E.2d at 423. A guilty plea hearing and a separate sentencing hearing do not occur "at the same time." *Patton,* 517 N.E.2d at 376. Unlike *Brooks,* both *Harris* and *Bewley* allow the trial court discretion when a defendant in a non-capital case maintains his innocence after he tenders a guilty plea. *Harris,* 671 N.E.2d at 869; *Bewley,* 572 N.E.2d at 544. As Carter accurately points out, it is not even clear, in the *Bewley* case, whether the trial court had accepted the guilty plea when the defendant maintained his innocence. Appellant's brief at 14. We conclude that formal acceptance of a guilty plea is not the proper focus for determining a trial court's authority to accept that plea where the defendant in a non-capital case has only maintained his innocence at a separate hearing and after having pled guilty.

■ Second, as detailed above, the plea statutes constitute a detailed plan to protect all of the constitutional rights of criminal defendants while allowing the State to eliminate a trial, at the defendant's request, when the trial portends no potential benefit to the defendant. An alternative system, in which a defendant is permitted to plead guilty after a thorough plea hearing and then to reassert his innocence when trial preparations are essentially abandoned, is a system in which, once a trial were underway, the State might only accept a plea bargain when it could not prove its case. Moreover, it is a system which would otherwise wreak havoc upon the administration of the trial court calendar. For all of the above reasons, we hold that where a trial court has followed the procedures outlined in the guilty plea statutes, and where the defendant's guilty plea is knowing and voluntary, his later assertion of innocence does not require the trial court to set aside his guilty plea. *See Harris* 671 N.E.2d at 869; *Bewley,* 572 N.E.2d at 544.

■ Therefore, in this case, we find that the trial court's conduct of Carter's plea hearing was thorough and proper; that his

later assertion, if it is an assertion of innocence, does not require the trial court to reject his guilty plea; and that there is nothing in the record to suggest that the trial court abused its discretion in accepting Carter's guilty plea. Carter has not demonstrated that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *See Woods*, 701 N.E.2d at 1210. Thus, we affirm the post-conviction court's denial of post-conviction relief.

Judgment affirmed.

STATON, J., concurs.

SULLIVAN, J., dissents with separate opinion.

## SULLIVAN, Judge, dissenting

If the trial court had accepted Carter's guilty plea at the time the plea agreement was tendered and the guilty plea hearing was conducted on September 8, 1993, we would have a quite different situation than is presented. Here, following the September 8, 1993 hearing, the trial court took the matter of acceptance of the guilty plea under advisement pending the pre-sentence report and the sentencing hearing itself. It was at the sentencing hearing and *before* the trial court accepted the plea that Carter protested his innocence.

Until the guilty plea is accepted, it is subject to a change in the plea agreement itself, and any number of other eventualities which might affect acceptance of the plea. The contents of the pre-sentence investigation report itself might prompt the trial court to reject the plea. In any event, until the plea has been accepted by the court it is a matter *in fieri*. It is for this reason that the law enunciated in *Brooks v. State* (1991) Ind.App., 577 N.E.2d 980 was then, and is now, valid authority.

It is the position of the majority here, that *Bewley v. State* (1991) Ind.App., 572 N.E.2d 541, *trans. denied*, decided some three months before *Brooks*, is the more persuasive authority.[3] In *Bewley*, a unanimous panel of this court, held that the particular guilty plea there involved was not required to be set aside despite protestations of innocence. The *Bewley* opinion did not state specifically that prior to sentencing when the defendant protested his innocence, the trial court had already accepted the guilty plea. But that conclusion is rendered virtually inescapable in light of the fact that the two concurring members of the panel in *Bewley* were on the unanimous panel in *Brooks* and that one of those two, Judge Shields, wrote the *Brooks* opinion. It stretches credulity to assume that the *Brooks* opinion would be written so shortly after and in direct contravention of *Bewley*. In any event, even if the plea in *Bewley* had not yet been accepted, the *Brooks* decision is squarely on point concerning the necessity to permit withdrawal of a plea prior to acceptance of the plea.

Notwithstanding his earlier statement at the plea hearing that "I shot somebody", which, together with other evidence before the court, provided a factual basis for the plea, the existence of that factual basis at the earlier time cannot override his subsequent protestation of innocence.[4] Record at 202.

3. The majority also relies upon *Harris v. State* (1996) Ind.App., 671 N.E.2d 864, *trans. denied*. That case is clearly inapplicable because the trial court had accepted the defendant's plea before the sentencing hearing at which the arguable protestation of innocence took place. During the sentencing hearing the dialogue concerning innocence drew from earlier statements made by defendant to the probation officer who conducted the pre-sentence investigation. Our court in reaching its holding noted: "Harris did not maintain his innocence in the court room, nor did he maintain his innocence prior to the court's acceptance of his guilty plea." *Id.* at 869.

4. My position with regard to protestations of innocence *vis-a-vis* guilty pleas does not alter my position that a defendant may enter a valid *Alford* "best interest" plea to a lesser offense in the face of extremely strong evidence against him which could result in a

Prior to acceptance of the guilty plea, Carter testified at the sentencing hearing:

"Okay, from the beginning, I was telling her that *I didn't do it* right, but you know, when push come (sic) to shove and I couldn't prove that I didn't do it, she you know what I'm saying, told me that I should sign a plea bargain right, and she's supposed to be my lawyer, and you know what I'm saying, if *I'm maintaining my innocence* she's supposed to be pushing with that for me no matter what the outcome could be." Record at 211. (Emphasis supplied).

I am unable to read these words to say anything other than "I didn't do it." I am further unable to read those words as anything other than a protestation of innocence.

The fact that, as considered of paramount importance by the majority, setting aside guilty pleas might "wreak havoc upon the administration of the trial court calendar" is insufficient basis upon which to discard the basic principles which underlie the incompatibility of the acceptance of a guilty plea in the face of a protestation of innocence. Op. at 285. In the case before us, in light of the fact that the trial court had not yet accepted the plea, the court had no alternative but to set aside the guilty plea and set the murder charge for trial. *Brooks, supra.*

I would reverse and remand with instructions to vacate the guilty plea and for further proceedings.

---

reasonable trier of fact concluding that defendant is guilty of the greater offense or in a maximum sentence as opposed to a bargained lesser sentence. *See North Carolina v. Alford* (1970) 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The difference in the two situations is that in the "best interest" plea, the defendant acknowledges that a strong factual basis exists, and enters his plea in that factual scenario, knowingly, voluntarily and intelligently. In the true protestation of innocence case, acceptance of the plea acknowledges that despite the defendant's specific disavowal of guilt, he has tendered such a plea. See *Lockard v. State* (1992) Ind.App., 600 N.E.2d 985, 990, *trans. denied* (Sullivan J., concurring); *But cf. State v. Van Cleave* (1996) Ind., 674 N.E.2d 1293 (in the context of an ineffective assistance of counsel assertion, the court observed in passing that the requirement of a factual basis for the plea "is designed to ensure that only guilty defendants plead guilty, and also that the defendant's decision to waive a jury trial is an informed and reflective one)." 674 N.E.2d at 1301. One might observe that the language reflecting the policy to allow only guilty defendants to plead guilty is used in terms of the voluntariness of the plea and does not necessarily preclude *Alford* or "best interest" pleas. On the other hand, one might observe that a defendant may not successfully attack a guilty plea upon grounds that a factual basis was not established unless he demonstrates prejudice in that his decision to plead guilty would have been different. *State v. Eiland* (2000) Ind., 723 N.E.2d 863. This would appear to dilute the above quoted language from *State v. Van Cleave, supra,* which seems to hold, without regard to voluntariness, that the absence of factual basis is fundamental error.